UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

METROPOLITAN LIFE INSURANCE )
COMPANY, )
 )
      Plaintiff )
 )
v. )   Docket No. 97-2331 (DRD)
 )
NATIONAL COMMUNICATIONS )
SYSTEMS, INC. d/b/a NATIONAL )
BENEFITS COMMUNICATIONS, INC., )
et al., )
 )
      Defendants. )

## ORDER

SINGAL, Chief District Judge

    Before the Court is the issue of whether the firm of Goldman, Antonetti & Cordova, P.S.C. should be disqualified from acting as Plaintiff's Counsel for Metropolitan Life ("Met Life") in this matter because of an alleged conflict of interest. For the reasons explained below, the Court finds that this disqualification issue is MOOT in light of both the signed waiver and voluntary dismissal of Defendant John D'Angelo from this action.

I.    BACKGROUND

    The disqualification issue presently before the Court has remained a focal point of the current litigation for years and has distracted both the parties and the Court from reaching the merits of this case. The issue arises from the fact that one of Plaintiff's lead counsel is Jesus E. Cuza of Goldman, Antonetti & Cordova, P.S.C. ("GA&C").[1] On

---

[1] The Court notes that Mr. Cuza continues to represent Plaintiff although he very recently ended his association with GA&C and became associated with the firm of Greenberg Taurig. Nonetheless, GA&C

August 16, 2000, after extensive briefing on the disqualification issue, Judge Dominguez disqualified GA&C from representing Met Life finding a conflict based on the fact that its predecessor firm, Goldman, Antonetti, Cordova & Axtmayer ("GAC&A"), had previously represented CGD Enterprises ("CGD"), a company owned and operated by Co-Defendant John D'Angelo ("D'Angelo").[2] (See Docket #241.) The Court also left unresolved the issue of whether GAC&A may have also represented D'Angelo in an individual capacity. Met Life filed for reconsideration and the Court agreed to reconsider the matter. In connection with its reconsideration, on July 19, 2001, the Court ordered that an evidentiary hearing be held on two issues related to the request for disqualification: (1) whether D'Angelo and CGD, in fact, were clients of GA&C and (2) whether the subject matter of that representation was substantially related to the firm's representation of Met Life in this case.

Before the scheduled evidentiary hearing, the litigants and the Court learned that D'Angelo had filed for bankruptcy thereby implementing an automatic stay on any claims against D'Angelo as of October 2001. (See Docket #298.) With D'Angelo out of the case, the Court and the parties turned their attention to settlement discussions and did not further pursue the disqualification issue. On December 16, 2002, following a series of failed settlement negotiations, Judge Dominguez "vacated and postponed sine die" the disqualification hearing before transferring the case to Judge Ward.

During a telephone conference with Judge Ward on March 19, 2003, the disqualification issue was resurrected and a briefing schedule and evidentiary hearing

---

apparently remain in the case as part of Plaintiff's local counsel team.

[2] As the predecessor firm name suggests, Co-Defendant Jose Axtmayer, was the fourth named partner at GAC&A at the time that the firm represented CGD and perhaps D'Angelo. Mr. Axtmayer apparently left GAC&A in March 1994 and at that time GAC&A became GA&C.

2

were set. On April 9, 2003, in an apparent attempt to moot the disqualification issue and avoid an evidentiary hearing, Met Life filed a motion seeking a voluntary dismissal of its claims against D'Angelo. In its motion, Met Life noted that the case against D'Angelo had already been subject to an automatic stay that was triggered upon D'Angelo's filing for bankruptcy. In addition to its motion for voluntary dismissal, Met Life also filed a waiver by D'Angelo, dated April 23, 2003, in which D'Angelo, on bahalf of himself and his companies, waived any right to disqualify GA&C. On May 15, 2003, Judge Ward granted Met Life's motion to dismiss any remaining claims against D'Angelo. The Court then ordered further briefing on the effects of D'Angelo's waiver and voluntary dismissal on the disqualification issue. As explained below, the Court now finds that the waiver and dismissal of D'Angelo moots any conflict of interest that may have warranted disqualifying GA&C from representing the Plaintiff in this case.

II.     DISCUSSION

The Local Rules for the United States District Court for the District of Puerto Rico specifically provide that all attorneys shall comply the American Bar Association's Model Rules of Professional Conduct (the "Model Rules"). See Local Rule 83.5(a). In his original August 15, 2000 Order disqualifying GA&C, Judge Dominguez explained that the conflict of interest allegations at issue here implicated Model Rule 1.10, which, in relevant part, prohibits a firm from representing a client whose interests are materially adverse to any client previously represented by a former member of the firm if the matters are "substantially related" and any lawyer at the firm has material information about the previous representation that is protected by Model Rules 1.6 and 1.9. In his

3

August 15, 2000 Order, Judge Dominguez found that GA&C's representation of Metropolitan Life fell within this prohibition because of the firm's past representation of CGD, one of D'Angelo's companies. At that time, the Court left unresolved the issue of whether GA&C may have also provided individual representation to D'Angelo in addition to its representation of CGD. In any event, it appears that any representation of CGD and/or D'Angelo was primarily handled by Mr. Axtmayer when he was a partner at GAC&A. However, other attorneys at GA&C apparently had access to material information regarding the representation of CGD. Thus, Judge Dominguez properly found that the conflict could be imputed to the firm under Model Rule 1.10(b)(2).

Model Rule 1.10(c) explicitly allows an affected client to waive any disqualification under the conditions stated in Model Rule 1.7. Based on this Court's review of the April 23, 2003 waiver signed by Mr. D'Angelo, on behalf of himself and his company, CGD, it appears that all of the conditions of a valid Rule 1.7 waiver have been met. Specifically, based on Mr. D'Angelo's involvement in this litigation from 1997 through most of 2001, the Court finds ample evidence that Mr. D'Angelo was aware of the circumstances of GA&C's representation of Met Life and understood the foreseeable ways that the conflict could have adversely affected his interests as well as any remaining interests of his now defunct company, CGD. Similarly, it appears clearly from the record that Met Life has a similar understanding of any potential conflict and wishes to waive any apparent conflict that may exist. Given Mr. D'Angelo's informed consent to GA&C's representation of Met Life, the Court finds no reason to impose the drastic remedy of disqualifying GA&C at this juncture in the case.

Moreover, the Court notes that because of the limited number of Defendants and

4

issues that remain in this litigation, it is unlikely that GAC&A's previous representation of CGD or D'Angelo prior to 1995 is, in fact, "substantially related" to the issues that remain to be litigated in this action. Similarly, the Court believes the issues remaining in this case do not encompass "the same body of facts" that were involved in GAC&A's representation of CGD. Kevlik v. Goldstein, 724 F.2d 844, 851 (1st Cir. 1984) (disqualifying a firm where the current representation involved the "same body of facts" involved in the past representation). For this reason, the Court finds no reason to conclude that GA&C will not be able to provide "competent and diligent representation" to Met Life because of the firm's past representation of CGD. See Model Rule 1.7, cmt. 15.

In this Court's assessment, it appears that the Defendants have resurrected the disqualification issue at this stage of the litigation solely to further delay a trial on the merits. The First Circuit has warned that "disqualification motions can be tactical in nature, designed to harass opposing counsel." Kevlik v. Goldstein, 724 F.2d at 848. In Kevlik, the Court ultimately determined that "the need for upholding high ethical standards in the legal profession far outweighs the problems caused by [any] delay in filing a disqualification motion." Id. This Court undoubtedly agrees with that statement and acknowledges that the timing of Defendant's motion does not and cannot provide grounds for denying the motion to disqualify.

That said, the Model Rules also warn that disqualification motions can be pressed for improper motives and thereby used as "procedural weapons." Preamble to Model Rules (quoted in Kevlik v. Goldstein, 724 F.2d 844, 848 (1st Cir. 1984)). A review of the context and history of this litigation suggests that the disqualification issue currently is, in

5

fact, being used as a "procedural weapon" to delay this litigation from being resolved on its merits. Most notably, one of the Defendants who continues to press for the disqualification of Plaintiff's Counsel is Co-Defendant and former GA&C partner, Mr. Axtmayer. It was, in fact, Mr. Axtmayer, who appears to have primarily handled the representation of CGD (and possibly D'Angelo) at GAC&A. After his departure from the firm, he apparently became a business partner of D'Angelo and it was this alleged partnership that gave rise to Plaintiffs allegations in this case. Under these circumstances, where Mr. Axtmayer's former client has knowingly waived any conflict, one might argue that the real conflict of interest arises from Mr. Axtmayer continuing to push for disqualification based on the same conflict of interest that his former client wishes to waive.

Having considered the unique facts presented by the pending motion for disqualification along with the entire procedural history of this case and the remaining parties and claims, the Court finds that the alleged conflict of interest has been duly waived and the disqualification issue is therefore MOOT. For this reason, the Court finds that Goldman, Antonetti & Cordova P.S.C. may continue to represent Met Life as they have since the inception of this case in September 1997.

SO ORDERED.

GEORGE Z. SINGAL
Chief United States District Judge,
District of Maine, sitting by designation

Dated this 2nd day of February 2004.