UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

METROPOLITAN LIFE INSURANCE )
COMPANY, )
 )
         Plaintiff )
 )
v. )   Docket No. 97-2331 (DRD)
 )
NATIONAL COMMUNICATIONS )
SYSTEMS, INC. d/b/a NATIONAL )
BENEFITS COMMUNICATIONS, INC., )
et al., )
 )
         Defendants. )

## ORDER

SINGAL, Chief District Judge

    Before the Court is Defendants' Motion for Clarification, Stay and/or Amendment of Order, which this Court received via fax on February 6, 2004 ("Defendants' Motion for Clarification"). Through this Motion, Defendants ask the Court to amend various portions of its February 2, 2004 Order. Alternatively, Defendants' Motion for Clarification also seeks a stay of the Court's Order and asks the Court to either conduct a further review of the documentary record or allow an interlocutory appeal of the Court's February 2, 2004 Order to the First Circuit Court of Appeals. For the reasons explained below, the Court DENIES Defendants' Motion for Clarification.

    First and foremost, Defendants' Motion reflects an apparent misunderstanding of the holding contained in the February 2, 2004 Order. In its February 2, 2004 ruling, the Court held that "the waiver and dismissal of D'Angelo moots any conflict of interest that may have warranted disqualifying GA&C." (Feb. 2, 2004 Order at 3.) In fact, the April 23, 2003 waiver signed by Mr. D'Angelo explicitly waives not only his personal right to

seek disqualification of GA&C, but also the right of "any and every corporation [D'Angelo] presided over and held majority interests in" to seek disqualification of GA&C. (Ex. 1 to Pl.'s Reply (Docket # 349).) Defendants' Motion for Clarification presents no evidence or argument that calls into question the scope or validity of this waiver. Rather, Defendants' Motion for Clarification appears to take issue with various other allegedly "incorrect assumptions and assertions."[1] (Defs. Mot. for Clarification at 2.) Assuming for the moment that Defendants had presented some argument or evidence that the cited and selectively quoted portions of the February 2, 2004 Order contained incorrect "assumptions and assertions," the fact remains that these assertions do not affect the basis for the Court's holding – namely, the waiver signed by Mr. D'Angelo. Finding no basis to reconsider its holding, the Court stands by its previous conclusion that the waiver MOOTS any conflict of interest that would warrant disqualification of Plaintiff's counsel.

Second, Defendants' Motion for Clarification generally suggests that this Court's Feburary 2, 2004 Order "contradicts and contravenes" the August 15, 2000 Order of Judge Dominguez on the issue of disqualification. To the extent that this Court's

---

[1] Defendants' cataloging of the Court's "incorrect assumptions and assertions" is inaccurate in many instances. By way of example, paragraph 4(A) of Defendants' Motion for Clarification takes issue with "the Court's assumption 'that the case against D'Angelo had already been subject to an automatic stay that was triggered upon D'Angelo's filing of bankruptcy.'" (Defs. Mot. for Clarification at 2.) In fact, the selectively quoted portion of the Court's order states a background fact that "[i]n its motion, Met Life noted the case against D'Angelo had already been subject to an automatic stay . . . ." (Feb. 2, 2004 Order at 3 (emphasis added).) In fact, Met Life's Motion for Partial Voluntary Dismissal (Docket # 340) does note the existence of an automatic stay as to D'Angelo. Thus, reviewed in context, the quoted portion correctly reflects the content of Met Life's Motion and does not state an "assumption" on the part of the Court.

In another example of Defendants apparent misreading and selective quoting of the Court's February 2, 2004 Order, paragraph 11 of Defendants' Motion for Clarification suggests that this Court's Order contains a "conclusory statement" regarding the existence of a partnership between Axtmayer and D'Angelo. (Defs. Mot. for Clarification at 6.) The Court's February 2, 2004 Order contains no such conclusion. Rather, the Order refers to Axtmayer "*apparently* becoming a business partner of D'Angelo" and an "*alleged* partnership." (Feb. 2, 2004 Order at 6 (emphasis added).) Thus, the Court's Order simply recognizes Plaintiff's allegations without making any finding of fact as to whether those allegations have been established or will be proven at a trial on the merits.

2

February 2, 2004 Order contains different findings and observations that those made by Judge Dominguez, the Court believes that those differences reflect factual changes brought on by the passage of time and the procedural developments of this case over the last three and a half years. In light of these changes, this Court's February 2, 2004 Order and Judge Dominguez's August 15, 2000 Order are easily reconciled. Having reviewed the statements that Defendants have listed as objectionable in their motion, the Court finds no basis for reconsidering and amending the narrative of its February 2, 2004 Order.

As to Defendants' request that they be allowed to take an interlocutory appeal of this Court's February 2, 2004 Order, the Court finds no basis for allowing an interlocutory appeal of this ruling. See Richardson-Merrell, Inc. v. Koller, 472 U.S. 424, 430-35 (1985); Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 370-76 (1981).

Defendants' Motion raises only one issue that requires further attention of the Court and the parties: the status of Co-Defendant National Communication Systems, Inc (d/b/a National Benefits Communications) ("NBC"). A review of the docket and recent filings in this action suggests that NBC may still be a party to this litigation although it has not been represented by counsel or otherwise appeared to defend itself since late 1998. In fact, even the certificates of service attached to all of the parties' recent filings do not suggest that the parties have been making any attempted service of their filings on NBC. In this Court's best assessment, the only explanation for NBC's current inactive status is that the company is simply in default. However, it does not appear that Plaintiff Met Life has ever sought to have a default entered against NBC. Because the record remains unclear as to the status of NBC in this litigation and in general, the Court hereby ORDERS that on or before February 13, 2004, the parties inform the Court in writing of

3

their respective positions on the status of NBC and what, if anything, remains to be done with respect to disposing of any remaining claims against NBC.

The parties are reminded that the jury trial of Plaintiff Met Life's claims against Defendants Jose Axtmayer, Altagracia Escudero and Hans & Marie Hertell will begin on March 1, 2004 and that the jury for this trial will be selected before Chief Judge Laffitte on February 19, 2004.

SO ORDERED.

GEORGE Z. SINGAL
Chief United States District Judge,
District of Maine, sitting by designation

Dated this _11_ th day of February 2004.

fax:
Berlingeri
Cuza
Parces
San Juan
Vicente

mail:
Zitrin
2/12/04

4