## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY,<br><br>Plaintiff<br><br>v.<br><br>NATIONAL COMMUNICATIONS SYSTEMS, INC., *et al.,*<br><br>Defendants | CIVIL NO.: 97-2331 (GZS) |

## DEFENDANTS' MOTION *IN LIMINE*

**TO THE HONORABLE COURT**:

**COME NOW** defendants José A. Axtmayer *pro se*, and Altagracia Escudero, Hans H. Hertell, Marie Stubbe and their conjugal partnership through their respective undersigned counsel, and respectfully state, allege and pray as follows:

**Introduction**

1. As per the order of the Court, defendants respectfully submit that evidence, both testimonial as well as documentary, regarding the matters enumerated below should not be offered at the trial of the instant action, for the reasons stated and discussed herein.

2. As such, this motion *in limine* seeks a protective order prohibiting plaintiff, its counsel and/or witnesses, from offering or even mentioning evidence at trial as to the matters set forth below, without first having its admissibility determined by the Court outside the presence of the Jury. (See Rule 103(c) of the Federal Rules of Evidence.) In this fashion, the Court is afforded the opportunity to rule on the admissibility of controverted evidence in advance, thereby preventing the entry into the record of prejudicial, irrelevant and inadmissible evidence the probative value of which is clearly outweighed by the danger of its unfair prejudice to defendants.

**Matters for Exclusion**

1. <u>Previously Dismissed Causes of Action, Allegations and/or Averments in Support Thereof</u>.  The latter include, without limitation, several causes of action incorporated in plaintiff's Second Amended Complaint that the Court dismissed in the course of these proceedings, such as the causes of action for fraud and embezzlement (Counts II and IV of the Second Amended Complaint), as well as the cause of action entitled "Insurance Companies" (Count VI of the Second Amended Complaint). In addition, plaintiff's allegations and/or averments in support of such causes of action previously dismissed by the Court, such as allegations of false and malicious misrepresentations, omissions and concealment, fraud, embezzlement, an alleged "conspiracy to embezzle *** hide the truth and ***misuse of the money" should also be excluded.  (See Second Amended Complaint, Counts II, IV and VI.)

By its Orders dated June 21, 2000 (Dkt. No. 235), and November 3, 2003 (Dkt. No. 361), the Court dismissed  Count's II, IV and VI of plaintiff's Second Amended Complaint, thereby rendering any reference thereto during the trial, as well as the use of or reference to plaintiff's conclusory and defamatory allegations and/or averments in support thereof contained in its Second Amended Complaint, unwarranted and  improper.  Accordingly, defendants request that the Court grant their motion *in limine* thereof.

In addition, defendants respectfully request that in the event the Court were to permit the Jury to review or inspect the Second Amended Complaint, that such pleading not be made available to the Jury in its current version, and that the Court only allow an amended and redacted version of the Second Amended Complaint to be available for the

Jury's review and/or inspection, excising from plaintiff's Second Amended Complaint all of the allegations and averments contained in Counts II, IV and VI dismissed by the Court, as well as any other averment and/or allegation in such pleading reflecting statements such as those contained in the aforementioned Counts that have been dismissed by the Court.

    2.    <u>The Testimony and Report of CPA Carlos Baralt, Plaintiff's Expert</u>. Rule 26 (a)(2) of the Federal Rules of Civil Procedure provides in pertinent part the following:

> "(A) In addition to the disclosures required by paragraph (1), a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence.
>
> (B) Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by written report prepared and signed by the witness. ***
>
> These disclosures shall be made at the times and in the sequence directed by the court. In the absence of other directions from the court or stipulation by the parties, **the disclosures shall be made at least 90 days before the trial date** ***."

Plaintiff's announcement of Mr. Baralt as an expert witness on February 12, 2004, contravenes the express provisions of FRCP 26(a)(2) quoted above (requiring notice no less than ninety (90) days before trial), and its delivery to defendants of Mr. Baralt's report on February 20, 2004 – less than ten (10) days before the commencement of the trial of this civil action – also contravenes such provisions. As a result, defendants are clearly prejudiced by plaintiff's failure to announce Mr. Baralt as its expert and submit his report within the term established in FRCP(a)(2), inasmuch as defendants were unable to retain their own expert with respect to the matters on which Mr. Baralt purports to testify as an expert or to depose Mr. Baralt.

Anticipating plaintiff's argument that Mr. Baralt's name appeared as an expert witness in Plaintiff's Initial Scheduling Conference Memorandum of August 24, 1998 (Dkt. No. 60; Page 13)), the Court should note that on such occasion Mr. Baralt was announced as an expert "to testify about the embezzlement committed in this case *** [and] about the economic damages suffered by MetLife as a result of codefendants' unlawful actions," whereas he is now announced as plaintiff's expert "to testify about MetLife's damages and BCC's and NBC's corporate and financial records and lack of corporate formalities." (See Joint Proposed Pretrial Order, page 47.)  In any event, the Court dismissed plaintiff's cause of action for *embezzlement* and such argument defeats plaintiff's right to use Mr. Baralt as an expert by failing to submit his written report in compliance with the ninety (90) day term provided in FRCP 26(a)(2)(C), notwithstanding knowing that Mr. Baralt would be its expert witness for more than five (5) years.

The First Circuit Court of Appeals has upheld a District Court's exclusion of an expert to a party that has incurred in discovery violations.  See, *Ortiz Lopez v.Sociedad Española de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 248 F.3d 29 (1st Cir. 2001), where the Circuit Court expressly stated that

> "plaintiff's failure to comply with the automatic disclosure rule of Rule 26(a) was both without substantial justification and not harmless.  For this, the district court *** sanctioned the plaintiffs by excluding their expert testimony entirely, a harsh sanction to be sure, but one that is within the wide latitude of the rule."  248 F.3d 35.

See also, *Rivera Pomales v. Bridgestone Firestone, Inc.*, 217 F.RD. 290 (D. P.R. 2003), where the district court ruled that the testimony of defendant's expert would be stricken as

a sanction for defendant's failure to comply strictly with the requirements of FRCP 26(a)(2) requiring the inclusion of the expert's curriculum vitae in the expert's report; and *Indigo America, Inc. V. Londonderry Technologies, LLC*, 2003 WL 22251157, 56 Fed. R. Svc. 798 (D.N.H. 2003), where plaintiff was precluded from presenting expert testimony for its failure to disclose its expert before the deadline established in FRCP 26(a)(2).

In the case at hand, plaintiff's use of Mr. Baralt as an expert is compounded by plaintiff's proffer of Mr. Baralt's testimony also as an expert on plaintiff's damages, without having provided the computation required by FRCP 26(a)(1), which expressly requires that a party

> "must, without awaiting a discovery request, provide to the other parties *** a computation of any category of damages claimed by the disclosing party, making available for inspection and copying *** the documents and other evidentiary material, ***, on which such computation is based, ***.

As a result, plaintiff should be precluded from presenting Mr. Baralt's testimony as to any category of damages claimed by plaintiff, thereby preventing plaintiff from having Mr. Baralt testify at trial with respect thereto.

In view of the foregoing, defendants respectfully request that the Court grant defendants' motion *in limine* and deny plaintiff the use of Mr. Baralt as an expert witness at the trial of this civil action and/or the use or distribution to the Jury of Mr. Baralt's report, as well as deny plaintiff the right to present Mr. Baralt's testimony as to any measure of damages sought by plaintiff.

In any event, defendants respectfully request that the Court schedule a *Daubert* hearing[1] to determine whether Mr. Baralt may be qualified as an expert in his proposed

---

[1] See, *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).

testimony regarding BCCPR's adherence to corporate formalities, and whether the proffered expert testimony from Mr. Baralt in this respect would in fact assist the Jury as the trier of facts to resolve some of the issues in controversy in the instant action.

    3.    <u>The Testimony and any Report from Ms. Jill Ann Garofalo, Assistant Vice President of MetLife</u>. Plaintiff announced Ms. Garofalo as one of its witnesses for the first time on February 12, 2004, describing her and her testimony as follows: "MetLife actuary to testify about MetLife's lost profits and other related damages." (Joint Proposed Pretrial Order, page 47.) Thereafter, on February 20, 2004, plaintiff provided defendants with a copy of Ms. Garofalo's resumé (Plaintiff's ID #340).

Defendants respectfully submit that Ms. Garofalo's testimony constitutes "expert testimony" as such testimony is described in FRCP 26(a)(2) and in the pertinent Federal Rules of Evidence, particularly because Ms. Garofalo's duties as a MetLife employee and actuary "regularly involve giving expert testimony" and the subject matter of her proferred testimony requires and is predicated on actuarial expertise that only an actuary such as Ms. Garofalo would have. As a result, Ms. Garofalo's testimony must be excluded given plaintiff's failure to notify her testimony as an expert (nor provide copies of her written report) within the terms provided in FRCP 26(a)(2) quoted above.

In addition, Ms. Garofalo's testimony must be excluded to the extent she is offered as a witness to testify about plaintiff's lost profits and other damages, since plaintiff failed to comply with the requirements of FRCP 26(a)(1) requiring that a party disclose a "computation of any category of damages claimed by the disclosing party." A review of the pleadings and docket in this case, and particularly the Joint Proposed Pretrial Order, reveals that plaintiff has never submitted any such computation of any of its alleged

damages, thereby preventing plaintiff from having one of its employees now testify as an actuary with respect to plaintiff's calculation of its alleged lost profits and/or damages.

Accordingly, defendants respectfully request that the Court grant defendants' motion *in limine* and deny plaintiff the use of Ms. Garofalo as a witness at the trial of this civil action and/or the use or distribution to the Jury of any report prepared by Ms. Garofalo.

4.     <u>References to Prior Oral Agreements that Predated the Letter of Intent</u>. Plaintiff's evolving breach of contract claim against defendants is now supported by plaintiff's allegations as to the existence of two verbal agreements that preceded MetLife's execution of its Letter of Intent and Loan with co-defendant National Communications System, Inc. d/b/a/ National Benefits Communication ("NBC") on September 11, 1995, namely a verbal "partnership agreement" among defendants and former co-defendants D'Angelo and Miller, and a verbal "principal agreement" by and between MetaLife and the alleged "partners." Such allegations, in turn, will be presumably supported by the testimony of former co-defendant Miller and MetLife officer Jim Danos ("Danos"), since their respective statements under penalty of perjury (respectively, the "Miller Statement" and the "Danos Statement") contained such averments and were recently introduced by plaintiff for the first time in these proceedings with its Opposition (Dkt. 369) to defendants' Motion for Summary Judgment. (Dkt. No. 353).[2]

---

[2] MetLife's first allegations as to the existence of a "partnership" between defendants and D'Angelo and Miller surfaced in the affidavit of its officer Steve Worley ("Worley"), rendered in support of MetLife's motion for leave to file its Second Amended Complaint filed on May 30, 1998 (Dkt.No. 38), but Worley's only averments in support thereof were hearsay statements and conclusions based on his personal impression to the effect that defendants "were presented to MetLife by John D'Angelo and George Miller as their Partners" and that "neither Hans Hertell nor Jose Axtmayer did or said anything *** to dispel my belief that they were an integral part of the Partnership."  (See Worley's Affidavit, Dkt. No. 38.)  Worley's Affidavit and his statements are, however, inadmissible and there is no reference in the Worley Affidavit to the defendants's acceptance or consent to entering into any "partnership" with D'Angelo and Miller, a critical requirement for such "partnership agreement" to exist.

MetLife's novel allegations regarding the existence of the "verbal agreement" creating the "partnership" and such entity's "verbal agreement" with MetLife clearly constitute material modifications and expansions of the description of MetLife's contract claims against defendants in its prior pleadings, including the Second Amended Complaint.[3]  A careful review of the Second Amended Complaint, however, reveals that there is not a single reference or allusion therein to an oral or verbal agreement entered into at any time by and between the alleged "partners" or by and between such "partners" and MetLife.  Similarly, the factual averments in the Second Amended Complaint do not refer to, contemplate or incorporate any agreement by and between MetLife and the "partners" that preceded the execution of the Letter of Intent and the Notes, which documents significantly fail to mention or refer to such preceding or principal agreements and which, by their very terms, indicate that they were expressly drafted as the initial agreements between the parties thereto.[4]  (See, Letter of Intent, attached as Exhibit B to Defendants' Reply in Support for Motion for Summary Judgment dated December 17, 2003 (the "Reply"), Dkt. No. 372.)

---

[3] For instance, MetLife's evolving contract claim initially did not have Axtmayer and Hertell even as parties to its Complaint (Dkt. No. 1); then MetLife claimed in its Amended Complaint (Dkt. No. 2) that Axtmayer and Hertell were allegedly "debtors" to a Loan and Notes that Axtmayer and Hertell never even signed; thereafter, MetLife's Second Amended Complaint (Dkt. No. 38) alleged that Axtmayer and Hertell were "partners" of D'Angelo and Miller indebted to MetLife under the Letter of Intent and Notes; and recently supported by the Miller and Danos Statements – MetLIfe sustains –  for the first time in these proceedings – that the "partnership" agreement and such partnership's contract with MetLife were in fact "verbal agreements."

[4] In fact, the Letter of Intent expressly refers in several of its provisions to the fact that the parties thereto were negotiating the terms of an agreement to be executed in the future, and that MetLife reserved the right to modify or cancel the such letter without any liability at any time prior to the execution of the future agreement contemplated therein. (See, Letter of Intent, Exhibit B to defendants' Reply in Support of Summary Judgment, Dkt. 373.)

In fact, the principal assertions made under penalty of perjury in the Miller Statement directly contradict the prior position taken by Miller personally or through his counsel in pleadings and other documents filed in these proceedings.  For example, Miller's answers to the Amended Complaint and Second Amended Complaint contain complete and absolute denials of MetLife's averments regarding the existence of any contract by and between MetLife and co-defendant NBC, as well as of MetLife's alleged breaches thereof.[5] Moreover, both answers contain counterclaims against MetLife predicated exclusively on a single agreement by and between MetLife and NBC, referred to therein as a "joint venture," and no reference or allusion is made to any other agreement or understanding with MetLife.  Lastly, the averments made on Miller's behalf in the aforementioned answers, and particularly those in the counterclaims, make no reference whatsoever to the existence of the "partnership" that Miller now states under penalty of perjury existed and contracted verbally with MetLife, since such counterclaims refer only to the "Stateside Defendants" (D'Angelo and Miller).  The foregoing allegations made by on behalf of Miller conflict directly with the assertions made under penalty of perjury in the Miller Statement that there was a prior "verbal agreement" with MetLife – which Miller denominates as the "August 1995 Principal Agreement" – and his detailed description of the terms and conditions thereof contradicts his prior blanket denials as to the existence of any such contract.

Another excellent illustration of the inherent contradictions and conflicts between Miller's averments throughout these proceedings and the contents of the Miller Statement

---

5  See Answers of co-defendants NCS, D'Angelo and Miller to the Amended Complaint (Dkt. No. 22) and Second Amended Complaint (Dkt. No. 51) pars. 20-27, where even the existence of the agreement reflected in the Letter of Intent was denied and the only relevant admission made was that "MetLife advanced some funds to NBC, as evidenced in certain promissory notes,***."

is found in Miller's Motion for Reconsideration of the Court's Order Granting Provisional Remedies ("Reconsideration"; Dkt. No. 162 ). In such pleading, Miller's counsel asserted on his behalf, *inter alia*, that the Letter of Intent was an agreement or contract entered into by and between MetLife and NBC; (ii) that MetLife appointed NBC as a broker and enroller of the MetLife products in Puerto Rico;[6] (iii) that although the Letter of Intent "provides for other subsequent agreements supposed to be executed between the parties, **no other written agreements were ever executed**;" and (iv) **"[a]s admitted by James Danos for MetLife, the letter of intent is the only written agreement between the parties."** (See Reconsideration, Dkt. No. 162, pp. 4-5; emphasis supplied.) In addition, Miller argues in his Reconsideration is that "MetLife opted to produce the testimony of **James Danos, who had no personal knowledge of the negotiations**" (Reconsideration, Dkt. No. 162, p. 10, emphasis supplied), and that

> "the letter of intent is the only agreement in writing between the parties [and] all parties have based their claims and defenses [there]under *** and no one has ever challenged its validity. Thus, MetLife has to live with its terms and under the parole evidence rule cannot bring at this moment any theory or evidence in addition or in contradiction thereof *** MetLife cannot have his cake and eat it too." (Reconsideration, Dkt. No. 162, pp.16-18.)

The foregoing contradictions and inconsistencies between Miller's prior assertions and his recent statements under penalty of perjury render the latter demonstrably incredible, while the flagrant contradictions between the Danos Statement and the documentary record proffered by MetLife in these proceedings render the Danos

---

6  This assertion also contradicts Miller's and Danos' Statements in which it is asserted under penalty of perjury that BCCPR assumed such responsibilities. See Miller Statement, par. 14, p.4; and Danos Statement, par. 12, p. 3).

Statement demonstrably false. In this respect, Danos expressly alludes in his statement under penalty of perjury that he "was tasked with the responsibility of preparing the paperwork" that resulted in the issuance and MetLife's execution with co-defendant NCS of the Notes and the Letter of Intent. (See Danos Statement, par. 10, pp. 3 and 4, attached to MetLife's Opposition, Dkt. No. 369.) As prepared and drafted by Danos, the Letter of Intent expressly states the following:

> "[t]he parties *** acknowledge that there are negotiating terms of an agreement ***. A formal proposal *** will be furnished as a separate document *** NBC's obligations *** shall survive the expiration, cancellation or termination of this Letter of Intent, unless replaced by **the proposed agreement**. *** MetLife reserves the right to alter or cancel this Letter of Intent without liability of any kind, to any time prior to the **execution of the agreement contemplated herein**. See Letter of Intent, Exhibit B attached to Reply, Dkt. No. 373; emphasis supplied.)

In view of the foregoing, Danos' principal assertion under penalty of perjury in his statement – that there was a prior verbal agreement with MetLife (the "August 1995 Principal Agreement") – is not only demonstrably incredible, but patently false and must be deemed an *ex post facto* fabrication by MetLife created only for the purpose of defeating the Motion for Summary Judgment. Otherwise, Danos' insertion in the Letter of Intent of the aforementioned references to an agreement to be negotiated and to be executed in the future would have no purpose or need whatsoever in such document. As such, MetLife and Danos must live with their documentary record and "cannot have their cake and eat it too," as they obviously are attempting to do.

More significantly, however, is that Miller's and Danos' principal assertions in their respective statements under penalty of perjury are expressly contradicted by their own prior

-11-

declarations made under oath in proceedings before this Court. For instance, the transcript of the hearing held before the Court on Plaintiffs' Motion for Provisional Remedies to Secure the Effectiveness of Judgment on September of 1999, at which hearing both Miller and Danos testified under oath, confirms that both Miller and Danos stated therein that there existed no other contract with MetLife except the Letter of Intent and Notes executed therewith by co-defendant NBC and bearing the signatures of D'Angelo and Miller. (See Transcript Excerpts, attached as Exhibit E to Reply, Dkt. No. 373.) In fact, such transcript evidences the perjurious nature of Miller's and Danos' assertions in their statements, as follows:

    1.    Miller states under oath that he was not signing the Notes as "partner or co-obligor or guarantor," thereby contradicting his recent statement under penalty of perjury that there existed a "partnership" prior to the execution of the Letter of Intent and the Notes. (See Transcript, Exhibit E to Reply, Dkt. No. 373, pp. 9, 29, 32-33, 37-40.)

    2.    Miller states under oath that D'Angelo's appearance at the execution of the Letter of Intent and the Notes was only on behalf of co-defendant NBC, thereby discrediting his recent statement under penalty of perjury regarding the alleged "partnership" and its alleged "verbal agreement" with MetLife that ostensibly preceded such event. (See Transcript, Exhibit E to Reply, Dkt. No. 373, p. 25.)

    3.    Danos states under oath that Miller executed the Notes as a "guarantor," which makes his current assertion that Miller was one of several "partners" liable to MetLife on such Note "patently incredible." (See Transcript, Exhibit E to Reply, Dkt. Nor. 373, pp. 67-68.)

-12-

4. Responding to Mr. Cuza's questions as to whether "the Puerto Rico program goes beyond the letter of intent," Miller testified under oath that "the letter of intent [was] to be followed by other agreements that would have taken care of these things ***. That was the outline of the deal. **There was no other agreement, unfortunately. *** Neither Met nor us ever sat down and finished the deal.**" (See Transcript, Exhibit E to Reply, Dkt. No. 373, pp.138-140.,)

5. Danos responds under oath that there were no other contracts with regards to the Puerto Rico operations besides the Letter of Intent, notwithstanding Mr. Cuza's repeated objections and attempts to prevent such answer. (*See Transcript, Exhibit E to Reply, Dkt. No. 373,, pp. 119-122.)

The Miller and Danos Statements unequivocally contradict their prior declarations under oath made by them at the aforementioned hearing regarding such material elements of MetLife's cause of action for breach of contract against defendants so as to render such statements demonstrably false and a sham fabricated by Met Life and its counsel.

Accordingly, pursuant to and consistent with the law of this Circuit, the testimony of Miller and Danos with respect to any oral agreements that predated plaintiff's execution of its Letter of Intent with co-defendant NBC – whether a prior oral agreement establishing plaintiff's alleged "partnership" between defendants and D'Angelo and Miller or whether a prior oral agreement between such "partnership and MetaLife – must not be permitted at the trial and the Miller ad Danos Statements must be stricken and/or disregarded by the Court and not permitted to be presented to or referred to in the presence of the Jury.

In fact, the principal factor that a court should bear in mind when determining whether to grant a *motion in limine* of testimony to be presented before a jury at trial is whether such testimony is improper, unresponsive and/or incompetent, and in the case of testimony which is uncertain, **contradictory as to allegations or prior declarations,** as well as prejudicial, the court should not permit its presentation to the Jury. To that effect, the Court should not permit the introduction of testimony or evidence which it knows will have to be stricken from the record, inasmuch as it constitutes at the very least testimony and evidence in direct contradiction with prior evidence and testimony rendered in these proceedings by the same declarants who will be witnesses at trial, and which testimony may in fact be perjurious. As such, the probative value of such testimony and/or evidence is clearly outweighed by the likelihood of its unfair prejudice.

In the case at hand, defendants respectfully submit that the testimony of Miller and Danos with respect to any oral agreements that predated plaintiff's execution of its Letter of Intent with co-defendant NBC – whether regarding a prior oral agreement establishing plaintiff's alleged "partnership" between defendants and D'Angelo and Miller or with respect to a prior oral agreement between such "partnership" and MetLife – must not be permitted. Such testimony is inadmissible to the extent it is patently false and/or perjurious, and cannot be allowed to be presented to the Jury at the trial of the instant civil action.

Accordingly, defendants respectfully request that the Court grant their motion *in limine* as to evidence – testimonial or documentary – with respect to oral agreements that predated MetLife's execution of its Letter of Intent with NBC, and that any such evidence and/or testimony be declared inadmissible and not permitted at trial.

5.   <u>References to an Alleged Oral "Partnership" Agreement By and Between Defendants and Former Co-Defendants John D'Angelo and George Miller.</u> Under Puerto Rico law, partners to a commercial association or partnership cannot enter into private or oral agreements, and the terms and conditions of their partnership agreement must be set forth in their written partnership agreement which, in order to be effective, must be recorded in a public instrument and presented to and filed with Puerto Rico's Mercantile Registry. (See Article 98, Puerto Rico Commerce Code, 10 L.P.R.A. 1344.)

Otherwise, only a "civil partnership" may be found to exist subject to and governed by an oral partnership agreement, but in such cases the existence of an oral partnership agreement must be established as that of any other oral commercial contract or agreement. In addition to the three elements that must be present for the existence of any valid contract or agreement – the consent of the contracting parties, the object of the contract, and the consideration thereof, Puerto Rico law also requires more than the testimony of witnesses, and to prove the existence of an oral commercial contract or agreement, such testimony must concur with other evidence in order for an oral commercial contract or agreement to exist as a matter of law.[7]

In fact, the U.S. District Court for the District of Puerto Rico has stated that "[b]y requiring non-testimonial evidence of the existence of a [verbal] commercial contract, this

---

[7] Article 82 of the Puerto Rico Commerce Code ("CC") provides that "[c]ommercial contracts shall be valid and shall cause obligations and causes of action whatever may be the form and language in which they are executed *** provided their existence is shown by any of the means provided by civil law. However, **the testimony of witnesses shall not in itself be sufficient to prove the existence of a contract the amount of which exceeds three hundred dollars, unless such testimony concurs with other evidence**." (10 LPRA 1302; emphasis supplied.)

-15-

article [Art. 82 of the Commerce Code] attempts to foster security in commercial transactions by promoting the use of more formal instruments." *Garita Hotel Ltd. Partnership* v. *Ponce Federal Bank, F.S.B.*, 954 F. Supp. 438, 449 (D.P.R. 1996) (Domínguez, J.). As a result, failure to prove the existence of an oral agreement or contract with the testimony of witnesses that concurs with other evidence may render the contract unenforceable not only as to third parties, but also as to the original parties thereto. *Id.*

If the "partnership" that plaintiff alleges existed between defendants and D'Angelo and Miller was a "commercial partnership," then its existence cannot be validly proven under Puerto Rico law inasmuch as their alleged partnership agreement was never set forth in writing and much less recorded in a public instrument filed in Puerto Rico's Mercantile Registry. Assuming, *arguendo*, that the alleged "partnership" between defendants and Messrs. D'Angelo and Miller was a "civil partnership," then its existence could be proven if plaintiff can successfully prove that an oral "partnership agreement" was entered into by such persons. The latter, however, is an impossibility in the instant action since there is no testimonial or documentary evidence of defendants' consent to any "partnership agreement" with D'Angelo and Miller,[8] and the only evidence thereof that plaintiff can proffer is testimonial evidence mostly of an unreliable and inadmissible nature

---

8  The consent of the parties is required under Puerto Rico law for any contract to be found to validly exist, whether oral or written. See Article 1213 of the Civil Code of Puerto Rico ("CCPR") wich requires that a valid contract have, among certain conditions, "the consent of the contracting parties"(31 LPRA 3391), and CCPR Article 1230, which provides that "[c]ontracts shall be binding ***provided the essential conditions required for their validity exist." (31 LPRA 3451.) In fact, the Supreme Court of Puerto Rico has held that if a contract lacks any of the necessary elements (including the consent of the parties thereto), it is null and void from inception. *Rodríguez v. Sucesión Pirazzi,* 89 D.P.R. 506, 547 (1963). See also, *Satellite Broadcasting Cable, Inc. v. Telefónica de España*, 786 F. Supp. 1089, 1096 (D.P.R. 1992).

(based on hearsay and contradicted by the prior sworn statements and the prior testimony of the proponents), and plaintiff has not and cannot offer reliable and admissible documentary evidence confirming the existence of its alleged oral partnership agreement between defendants and D'Angelo and Miller.

In view of the foregoing, defendants respectfully request that the Court grant their motion *in limine* and deny the admission of such evidence and/or testimony at trial.

5. <u>References to an Alleged Oral Agreement Between Defendants' Partnership and MetLife</u>. As stated above, Puerto Rico law requires that the existence of an oral agreement be established by more than the testimony of witnesses, and to prove the existence of an oral contract or agreement, such testimony must concur with other evidence in order for an oral contract or agreement to exist as a matter of law. (See Article 82, Puerto Rico Commerce Code; and *Garita*, **supra.**)

In the case at hand, plaintiff's testimonial evidence as to the existence of an oral agreement between defendants and MetLife is not supported by any reliable and admissible extrinsic evidence confirming the existence of such oral agreement. To the contrary, the only written agreement that MetLife entered into – its Letter of Intent with co-defendant NBC (signed by D'Angelo and guaranteed by Miller), does not refer in any manner whatsoever to a prior oral agreement, and instead contains express provisions as to a future definitive agreement that such parties intended to enter into in writing.

As a result, plaintiff cannot prove the existence of an oral agreement between defendants and MetLife, and defendants respectfully request that the Court grant their motion *in limine* with respect thereto and deny the admission of such evidence and/or

testimony at trial.

  6. <u>References to the Alleged Oral Agreement Between MetLife and Benefits Communication Corporation of Puerto Rico ("BCCPR")</u>. Here again, plaintiff's only evidence in support of its alleged existence of an oral agreement by and between MetLife and BCCPR is the hearsay, unreliable and contradictory testimony of witnesses, and there is not one single piece of documentary evidence supporting or confirming the existence of this alleged oral agreement. As such, its existence cannot be validly proven under Puerto Rico law and, accordingly, defendants respectfully request that the Court grant their motion *in limine* of any evidence related thereto and not permit its introduction and/or testimony with respect thereto at trial.

  7. <u>References to the Alleged Assignment to BCCPR of the Partnership's and/or Co-Defendant NBC's Contractual Obligations to MetlLife</u>. Lastly, a review of plaintiff's exhibits submitted with the Joint Proposed Pretrial Order confirms that there is not one single piece of documentary evidence reflecting or confirming an assignment to BCCPR of any of the "partnership's" and/or NBC's alleged obligations to MetLife. As a result, plaintiff's only evidence in support of its alleged assignment of such obligations to BCCPR is the testimony of its witnesses and, as such, is insufficient as a matter of Puerto Rico law to establish the existence of such assignment as an oral agreement. Accordingly, defendants respectfully request that the Court grant their motion *in limine* of any evidence related thereto and not permit its introduction and/or testimony with respect thereto at trial.

### Request for Order

In summary, defendants respectfully request an order from the Court instructing plaintiff, its counsel and/or witnesses from mentioning, referring to, or bringing before the Jury, directly or indirectly, upon reading of the pleadings, statements of the case, interrogation of witnesses, arguments, objections before the Jury, or in any other manner, any of the matters set forth above, unless and until such matters have first been called to the Court's attention out of the presence and hearing of the Jury and a favorable ruling has been rendered by the Court as to the admissibility and relevance of such matters, as well as advising counsel for defendant that a violation of the Court's order would deprive plaintiff of a fair and impartial trial and may constitute contempt of court.

**WHEREFORE**, defendants respectfully request that the Court grant the relief sought herein and rule accordingly.

**RESPECTFULLY SUBMITTED,** in San Juan, Puerto Rico, this 25th day of February 2004.

**I HEREBY CERTIFY** that on this same date a true and exact copy of this motion was served by first class mail to: **Jesús Cuza, Esq.,** Greenberg Traurig, PA, 401 East Las Olas Blvd., Suite 200, Ft. Lauderdale, FL 33301; **Ina M. Berlingeri Vincenty,** Esq. Goldman Antonetti & Cordova, P O Box 70364, San Juan, Puerto Rico 00936-0364; **Harold Vicente, Esq.,** P O Box 11609, San Juan, PR 00910-1609; and **Judge George Z. Singal** through fax number 207-780-3392.

**/s/ JAA**
**JOSE A. AXTMAYER**
*Pro Se*
PO Box 70174
San Juan, P.R.  00936-8174
Tel.  787-777-4040
Fax. 787-777-4041
USDC-PR NO. 120613
jaxtmayer@axtmayerpsc.com


**/s/ Dennis B. Parcés**
**DENNIS PARCES-ENRIQUEZ**
*Counsel for Altagracia Escudero*
PO Box 70174
San Juan, PR 00936-8174
Tel.  787-777-4040
Fax. 787-777-4041
USDC-PR NO. 220013
dparces-enriquez@axtmayerpsc.com


**/s/ Manuel San Juan**
**MANUEL SAN JUAN**
*Counsel for the Hertells*
PO Box 9023587
San Juan, PR 00902-3587
Tel. 787-723-6637/69
Fax 787-725-2932
USDC-PR NO. 204706
sanjuanm@microjuris.com

-20-