## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY,<br><br>Plaintiff<br><br>v.<br><br>NATIONAL COMMUNICATIONS SYSTEMS, INC., *et al.,*<br><br>Defendants | CIVIL NO.: 97-2331 (GZS) |

## **DEFENDANTS' PROPOSED SPECIAL INSTRUCTIONS TO THE JURY**

**TO THE HONORABLE COURT**:

**COME NOW** defendants José A. Axtmayer *pro se*, and Altagracia Escudero, Hans H. Hertell, Marie Stubbe and their conjugal partnership through their respective undersigned counsel, and respectfully submit the following proposed special instructions to the Jury:

**THE COURT'S STANDARD INSTRUCTIONS**

The undersigned counsel have reviewed the standard instructions to the Jury that the Court has published and which it customarily utilizes in civil trials[1] and have no objection to their use in these proceedings, except for the following observations submitted for the Court's review and consideration:

---

[1] Defendants refer to the Standard Jury Instructions for Civil Trials of the United States District Court for the District of Maine.

**1.    Credibility of Witnesses**

It is respectfully requested that the following clause be added at the end of the Court's standard instruction to the Jury entitled "Credibility of Witnesses": "including any prior inconsistent testimony, sworn statement or declaration made by any witness or party."

**2.    The Applicable Law**

It is respectfully requested that in view of the fact that there was no evidence presented regarding a decision or agreement by the parties to this case to have the law of any specific place or jurisdiction applied to their controversies, that the Court inform the Jury that the law to be applied in this case – as explained and instructed by the Court – is the law of Puerto Rico.

**3.    Co-Defendants D'Angelo, Miller and NBC**

Defendants respectfully request that the Court inform the Jury that former co-defendants John D'Angelo ("D'Angelo") and George Miller ("Miller") are no longer parties to these proceedings because plaintiff voluntarily sought to dismiss its Second Amended Complaint against them.[2]

With respect to co-defendant National Communications System, Inc. d/b/a National Benefits Communication ("NBC"), defendants reiterate their prior request made to the Court to the effect that the Jury be informed of NBC's default in these proceedings, and of NBC's failure to date to satisfy any of its indebtedness to MetLife under the Letter of

---

[2] This proposed instruction presumes that the Court will ultimately grant co-defendant Miller's Motion Reiterating Request for Entry of Judgment dated February 16, 2004 (Dkt. No. 402), in which Miller requests the entry of judgment dismissing plaintiff's claims against Miller by reason of plaintiff's voluntary dismissal of its action against Miller.

Intent subscribed by NBC and MetLife dated September 11, 1997, as well as under the Promissory Notes issued pursuant to the terms of the Letter of Intent.

**SPECIAL INSTRUCTIONS OR RULES OF LAW**[3]

    **I.**    **Plaintiff's Claims Against Defendants**

Plaintiff has three (3) separate claims against defendants and you are being asked to decide the merits of each one of those claims, namely:

    **A.**    **Breach of Contract**. Plaintiff claims defendants were "partners" of Messrs. D'Angelo and Miller and that their "partnership" entered into an oral or verbal agreement with MetLife for the sale and distribution in Puerto Rico of one of MetLife's life insurance products through a mechanism called a "benefits communication program." Plaintiff also claims that the "partnership" breached its contractual obligations to MetLife under such verbal agreement and seeks damages from defendants as "partners" responsible therefor.

As a result, in order for you to find for plaintiff under its first cause of action for breach of contract, you must first find that there was in fact a "partnership agreement" between defendants and Messrs. Miller and D'Angelo. If you find that there was such "partnership agreement," you must then determine if such "partnership" did in fact enter into an oral or verbal agreement with MetLife and, if it did, what where the duties and obligations of the "partnership" under such verbal agreement with MetLife. If you determine that such verbal agreement between the "partnership" and MetLife did in fact exist, then you must determine if the "partnership" did in fact breach any of its duties or obligations to MetLife under such verbal agreement, and only if you determine that it did,

---

3 Footnote references are to the statutory and/or case law support for the proposed instruction(s) to the Jury.

may you then proceed to determine the damages suffered by MetLife as a result of such breach, and defendants' responsibility to MetLife therefor.

### 1. Existence of a Partnership

Accordingly, your first inquiry must be if defendants were "partners" of Messrs. D'Angelo and Miller; or in other words, if a "partnership agreement" did in fact exist between defendants and D'Angelo and Miller.  Defendants contend that they never entered into or even consented to any "partnership agreement" or contract – whether written or verbal – with Messrs. D'Angelo and Miller, and that they never were and never agreed to be "partners" of John D'Angelo and/or George Miller.

In this respect, for a contract to exist or be formed, the law requires that **all three (3)** of the following elements be present:  (1) the **consent** of the contracting parties; (2) a definite **object** or purpose for the contract; and (3) an exchange of **"causa"** or **consideration** ("value") between the parties to the agreement or contract.[4]  Therefore, for you to find that a "partnership agreement" existed between defendants and D'Angelo and Miller, you must find that plaintiff established **by the preponderance of the evidence** all three (3) of those elements, namely that defendants did in fact enter into  or consented to enter into a  "partnership agreement" with D'Angelo and Miller; the object or purpose of such partnership agreement, and the exchange of "value" between the "partners." Otherwise, no partnership agreement can be found to exist between defendants and D'Angelo and Miller, and you must conclude that there was no "partnership agreement" between defendants and D'Angelo and Miller.

---

4  Article 1213 of the Civil Code of Puerto Rico ("CCPR"), 31 LPRA 3391; CCPR Article 1230, 31 LPRA 3451; *Rodríguez v. Sucesión Pirazzi*, 89 DPR 506, 547 (1963).

As a result, if you find that the plaintiff failed to meet its burden of proof by not proving by the preponderance of the evidence the existence of a "partnership agreement" between defendants and D'Angelo and Miller, then your verdict on the first cause of action for breach of contract must be for the defendants. In other words, if you find that plaintiff failed to meet its burden by not proving by the preponderance of the evidence that all three of the requirements of a contract were present here – the **consent** of the parties, the **object** of the contract, and an exchange of **"value**," then you may conclude that no "partnership agreement" in fact existed between defendants and Messrs. D'Angelo and Miller, and your verdict on the first cause of action for breach of contract must be for the defendants.[5]

2. **Existence of Verbal Agreement With MetLife**

If you find, however, that a "partnership agreement" did in fact exist between defendants and Messrs. D'Angelo and Miller, then you must proceed to determine if there was or not an oral or verbal agreement between such "partnership" and Metlife as plaintiff claims. In order to do so, you must again determine if plaintiff has proven by the preponderance of the evidence the existence of the three elements required for an agreement or contract to exist, namely: the **consent** of the parties, the **object** of the contract or agreement, and the exchange of "**value**" between MetLife and the "partners."[6] Otherwise, you must conclude that no agreement existed between defendants and MetLife and you must find for the defendants.

---

[5] CCPR Article 1213, 31 LPRA 3391; CCPR Article 1230, 31 LPRA 3451; *Rodríguez v. Sucesión Pirazzi*, 89, DPR 506, 547 (1963).

[6] Id.

In this case, however, plaintiff claims that the agreement between the "partners" and MetLife was a "verbal or oral agreement" and, as a result, your decision requires further analysis. While the law permits you to find that a verbal agreement or contract may exist, this is only permitted in certain special and limited circumstances and subject to certain strict requirements. For instance, a verbal agreement cannot be deemed to exist merely on the basis of the testimony of one or more witnesses, and for you to find that a verbal agreement existed in this case – in addition to the evidence of consent, object and value required for any agreement to exist — there must also be at the very least some reliable and credible additional (extrinsic) piece of **documentary evidence** confirming the existence of such oral agreement.[7] Otherwise, you cannot find that a verbal agreement existed between MetLife and the alleged "partners," and if plaintiff failed to meet its burden by not proving by the preponderance of the evidence the existence of a verbal agreement between the "partners" and MetLife, then you may conclude that such verbal agreement did not exist and your verdict on the first cause of action for breach of contract must also be for the defendants.

In the case at hand, plaintiff claims that the "partnership agreement" between defendants and MetLife was also an oral or verbal agreement. In this respect, the law requires that if the purpose of such "partnership" is commercial in nature, then such "partnership agreement" must be in writing for you to decide that it in fact existed,[8] so that if you decide that based on the evidence presented by plaintiff the purpose or object of the

---

7 Article 82 of Puerto Rico's Commerce Code, 10 LPRA 1302; *Garita Hotel Limited Partnership v. Ponce Federal Bank, FSB,* 954 F. Supp. 438, 449 (D.P.R. 1996)(Domínguez, J.).

8 Article 98 of Puerto Rico's Commerce Code, 10 LPRA 1344.

alleged "partnership" between defendants and Messrs. D'Angelo and Miller was "commercial," then you can only decide that such "partnership agreement" existed if plaintiff has proven by the preponderance of the evidence that such "partnership agreement" was in writing.  Otherwise, you may conclude that such "partnership agreement" with a "commercial" purpose did not exist, and your verdict on the first cause of action for breach of contract must be for defendants.

If based on the evidence presented by plaintiff, however, you decide that the object of such alleged "partnership" between defendants and Messrs. D'Angelo and Miller was not "commercial," then whether or not a verbal "partnership agreement" existed must be determined as if it were any other verbal agreement.  In other words, for you to decide that an oral "partnership agreement" existed between defendants and Messrs. D'Angelo and Miller, you must first determine if plaintiff proved by the preponderance of the evidence the existence of the three (3) elements required for any agreement of contract (consent of the parties, object of the contract and consideration),[9] and you may not rely solely on the testimony of witnesses to determine that such verbal "partnership agreement" existed between defendants and D'Angelo and Miller,  but you must determine that there was some additional reliable and credible piece of documentary evidence supporting the existence of such verbal partnership agreement for you to determine that it in fact existed.[10] Otherwise,  if plaintiff has not met its burden of proof by a preponderance of the evidence in this respect, then your verdict on the first cause of action for breach of contract must be for defendants.

---

9 CCPR Article 1213, 31 LPRA 3391; CCPR Article 1230, 31 LPRA 3451; *Rodríguez v. Sucesión Pirazzi*, 89, DPR 506, 547 (1963).

10 Article 82 of Puerto Rico's Commerce Code, 10 LPRA 1302; *Garita Hotel Limited Partnership v. Ponce Federal Bank, FSB,* 954 F. Supp. 438, 449 (D.P.R. 1996)(Domínguez, J.).

3. **Breach of the Verbal Agreement**

If you decide that a verbal partnership agreement did in fact exist making defendants "partners" of D'Angelo and Miller, and that plaintiff has proven by the preponderance of the evidence that such "partners" did in fact enter into a verbal agreement with MetLife, then you must decide if plaintiff established by the preponderance of the evidence the terms and conditions of such verbal agreement between the "partners" and MetLife, so that you may then determine if there is sufficient evidence to support that defendants breached any of the duties or obligations of the "partners" to MetLife under their verbal agreement.

If you decide that plaintiff did not prove by the preponderance of the evidence that defendants breached any of their duties or obligations to MetLife under their verbal agreement, then you must find for defendants on the first cause of action for breach of contract. Otherwise, if you determine that the preponderance of the evidence presented by plaintiff proved that defendants did in fact breach any of the partners' duties or obligations to MetLife under their verbal agreement, then you may proceed to determine if such breach did in fact damage plaintiff and, if so, the measure of damages, if any, suffered by MetLife as a direct consequence of such breach.[11]

4. **Causation**

To decide that the defendants' breach of any of the partners' duties or obligations to MetLife under their verbal agreement did in fact cause damages to MetLife, plaintiff must prove by a preponderance of the evidence that its damages were the direct

---

11 See CCPR Article 1077, 31 LPRA 3052.

and immediate consequence or result of defendants' breach.[12] Otherwise, if plaintiff does not establish by a preponderance of the evidence that plaintiff's damages were the direct result or immediate consequence of defendants' breach of any of their duties or obligations to MetLife under their verbal agreement, then you must find for defendants in the first cause of action for breach of contract.

### 5. Measure of Damages

Otherwise, if you determine that the preponderance of the evidence presented by plaintiff proved that its damages were in fact the direct and immediate result of defendants' breach of their duties or obligations to plaintiff under their verbal agreement, you may proceed to determine the amount of damages, if any, which plaintiff is entitled to receive from defendants as a result.

In evaluating the measure of damages to which plaintiff is entitled, you may consider all of the evidence presented, including moneys previously recovered or collected by plaintiff from other parties or former defendants in these proceedings, in order to determine the amount of damages which plaintiff is entitled to recover from these defendants.

In this respect, the law entitles parties to a contract that has been breached to recover only their foreseeable damages, and does not entitle such parties to receive speculative or punitive damages.[13] In other words, only the amount that would make the aggrieved party to a contract "whole" may be granted as damages,[14] and amounts claimed

---

12  See CCPR Article 1060, 31 LPRA 3024.

13 See CCPR Article 1060, 31 LPRA 3024, which contains Puerto Rico's statutory measure of damages for breach of contract.

14 As noted by the First Circuit Court of Appeals in *Noble v. Corporación Insular de Seguros*, 738 F.2d 51 (1st Cir. 1984), "[d]amages in Puerto Rico are compensatory. *** Perez v. Sampedro, 86 DPR 526 (1962) (contracts); *** (punitive damages do not exist in Puerto Rico). *** ." 738 F.2d at 54.

by such party beyond that amount, or amounts that are punitive, speculative and/or unforeseeable at the time of the contract's breach, may not be included in the measure of damages.[15]

B. **A Claim for Unjust Enrichment.** Plaintiff's second cause of action against defendants is that they were "unjustly enriched" at MetLife's expense. However, if you find that an actual contract existed between Metlife and defendants, then no finding can be made of "unjust enrichment" and your verdict on the second cause of action for unjust enrichment must be for defendants.[16]

However, if you find that no contract existed – in other words, if your verdict on the first cause of action was for defendants – then you may proceed to determine if plaintiff met its burden of proof regarding the second cause of action for "unjust enrichment." In order to do so, the law requires that plaintiff satisfy by the preponderance of the evidence **all four (4) conditions** which must all be satisfied[17] for a cause of action for "unjust enrichment" to proceed, or otherwise you cannot find that defendants were "unjustly enriched" at plaintiff's expense and must find for defendants on the second cause of action.

---

15 CCPR Article 1060, 31 LPRA 3024.

16 See, *Medina & Medina v. Country Pride Foods, Ltd.*, 631, F. Supp. 293, 302 (D.P.R. 1986), *aff'd.*, 901 F.2d 181(1st Cir. 1990), and *Garriga v. Marbella del Caribe*, 143 DPR 927 (1997), the official translation of which was attached as Exhibit A to Defendants' Reply in Support for Summary Judgment (Dkt. No. 372). These cases support the proposition that under Puerto Rico law a claim for unjust enrichment cannot be made when there is an allegation that there is an express agreement between the parties governing their relationship. See also, *Ocaso, SA, Cia. De Seguros v. Puerto Rico Maritime Shipping Authority*, 915 F. Supp. 1244 (DPR 1996) and *Alllied Vision Group, Inc. V. RLI Professional Technologies, Inc.*, 916 F. Supp. 778, 781 (ND Illinois 1996). The same legal precept exists under New York law. See, *Kreiss v. McCown De Leeuw & Co.*, 131 F. Supp.2d 428 (SDNY 2001)(Ward, J.).

17 See, *Municipio de Cayey v. Soto*, 131 DPR 304 (1992), and *Ortiz Andújar v. Commonwealth of Puerto Rico*, 122 DPR 817 (1988).

The four (4) requirements which plaintiff must have proven by the preponderance of the evidence for its claim of "unjust enrichment" to prosper are :

1. The actual existence of an "enrichment."

2. The presence of a correlative impoverishment.

3. A connection between the enrichment and the impoverishment.[18]

4. The absence of a legal precept that excludes the application of the doctrine of "unjust enrichment."

Again, **all four requirements must be satisfied** by the preponderance of the evidence presented by plaintiff for you to find that defendants' were unjustly enriched at plaintiff's expense, and if you find that plaintiff failed to prove by the preponderance of the evidence any one of such four requirements, then your verdict on the second cause of action for unjust enrichment must be for defendants.

Otherwise, if you do find that plaintiff proved **all four (4) of such elements** by the preponderance of the evidence and that therefore defendants were "unjustly enriched" at plaintiff's expense, then you may proceed to determine the amount of such "unjust enrichment" that plaintiff is entitled to receive from the defendants. In so doing, bear in mind my prior instructions regarding the limitations imposed by law on the determination of damages, for they also apply to this situation. As a result, you may decide that defendants must reimburse plaintiff for the amount by which you determine that they were

---

18 See *Garriga v. Marbella del Caribe*, 143 DPR 927 (1997), Exhibit A to Defendant's Reply in Support of Summary Judgment (Dkt. No. 372), holding that plaintiff must show, *inter alia*, that there is a connection between defendants' enrichment and plaintiff's impoverishment, and *Federal Insurance Company v. Banco de Ponce*, 582 F. Supp. 1388 (DPR 1984). See also, *Kagan v. K-Tel Entertainment, Inc.,* 172 A.D. 2d 375, 376, 568 N.Y.S. 2d 756, 757 (NY, 1st Dept. 1991), and *Int'l Customs Assocs., Inc. Ford Motor Company*, 893 F.Supp. 1251 (SDNY 1995).

"unjustly enriched" at plaintiff's expense, and in so doing you may determine that it would not be unjust for defendants to retain such amounts.[19] Whatever amount you do in fact determine that must be returned by defendants to plaintiff as a result of their "unjust enrichment" at plaintiff's expense, if any, such amount must be based on all of the evidence presented, including moneys previously recovered or collected by plaintiff from other parties or former defendants in these proceedings. As I indicated earlier, plaintiff is not entitled to receive speculative or punitive amounts, but only the amount that would make plaintiff "whole" as a result of your determination that defendants were "unjustly enriched" at plaintiff's expense.[20]

    C.    **Claim to Pierce BCCPR's Corporate Veil**. Plaintiff's third and last cause of action against defendants is a request that they be found responsible for the obligations to plaintiff that a corporation named Benefits Communications Corporation of Puerto Rico ("BCCPR") – of which defendants were shareholders – did not satisfy. In other words, this cause of action seeks that you make defendants personally responsible to plaintiff for BCCPR's obligations to MetLife which BCCPR failed to perform.

Normally, the law protects the shareholders of a corporation from any personal liability to anyone for the acts or omissions of the corporation of which they hold shares[21] but in certain limited circumstances and subject to strict conditions, the law allows that the

---

19 See *Municipio de Cayey v. Soto*, 131 DPR 304 (1992).

20 See CCPR Article 1060, 31 LPRA 3024, which ostensibly governs in cases of breach of contract, but is also applicable to damages in the event of a finding of "unjust enrichment" a cause of action based on *quasi contracts* under the civil law of Puerto Rico.

21 See Article 403 of Puerto Rico's General Corporation Law, 14 LPRA 2723.

"corporate veil" protecting the shareholders be "pierced" to make them personally responsible for the corporation's liabilities.

### 1. **Existence of BCCPR's Verbal Agreement with MetLife**.

However, for you to pierce BCCPR's corporate veil and make defendants personally responsible to MetLife in this case, you must first find that plaintiff proved by the preponderance of the evidence that there was in fact an agreement or contract between BCCPR and MetLife, and to do so you must again apply the instructions I gave you earlier both regarding the requirements for the existence of a contract and the conditions for an oral agreement to exist. Otherwise, if plaintiff failed to meet its burden of proof in this respect and did not prove by the preponderance of the evidence that an agreement or contract did in fact exist between MetLife and BCCPR – whether written or oral – then your verdict on the third cause of action must be for defendants. This determination, of course, requires that you decide if plaintiff established by the preponderance of the evidence the presence of all three required elements for any contract to exist (**consent** of the parties, **object** of the contract and the exchange of **consideration** or "value")[22], and that the existence of such alleged verbal agreement between MetLife and BCCPR be proven not only by the testimony of witnesses, but that its existence be confirmed by some reliable and credible additional (extrinsic) piece of **documentary evidence** confirming the existence of such oral agreement.[23]

---

22 CCPR Article 1213, 31 LPRA 3391; CCPR Article 1230, 31 LPRA 3451; *Rodríguez v. Sucesión Pirazzi*, 89, DPR 506, 547 (1963).

23 Article 82 of Puerto Rico's Commerce Code, 10 LPRA 1302; *Garita Hotel Limited Partnership v. Ponce Federal Bank, FSB,* 954 F. Supp. 438, 449 (D.P.R. 1996)(Domínguez, J.).

### 2. **BCCPR's Breach of its Verbal Agreement with MetLife**

In addition, if you find that such verbal agreement or contract between BCCPR and MetLIfe did in fact exist because plaintiff proved by the preponderance of the evidence that the requisite "consent, object and value" were present and there was extrinsic documentary evidence confirming the existence of such verbal agreement, then you must also find that BCCPR did in fact breach such oral agreement with MetLife[24] as a condition to proceed and determine whether or not to pierce BCCPR's corporate veil and make defendants personally responsible to Metlife for BCCPR's breach of its obligations to MetLife under their verbal agreement.

If not – if plaintiff failed to prove by the preponderance of the evidence that BCCPR did in fact breach any of its contractual obligations to Met Life – then your verdict on the third cause of action must also be for defendants.

### 3. **BCCPR as Defendants' *Alter Ego***

Only if you find that plaintiff has proven by the preponderance of the evidence that an oral agreement existed between BCCPR and MetLife which BCCPR in fact breached, may you then proceed to consider whether to pierce BCCPR's corporate veil and make defendants personally responsible to Metlife for such breach. In order to do so, however, you must be satisfied that plaintiff has proven by the preponderance of "**strong and robust evidence on record**"[25] that BCCPR was in fact the defendants' *alter ego*, or in other words, that the creation and existence of BCCPR was a "sham" that served **no**

---

24 CCPR Article 1077, 31 LPRA 3052.

25 See *González v. St. Just Corp.*, 101 DPR 168, 170 (1973)

**other** legitimate purpose but to protect defendants from personal responsibility, and that BCCPR had no real valid or legitimate purpose or reason to exist except to shield defendants from such personal liability.[26]

The burden that plaintiff must satisfy in order for you to decide to ignore the protection the law customarily gives shareholders of a corporation and pierce BCCPR's corporate veil in this case may not be met or satisfied by the mere allegation that BCCPR is defendants' *alter ego,* and **plaintiff must present strong and robust evidence that there was in fact no adequate separation between the personalities of BCCPR and the defendants, for you to pierce its corporate veil and make defendants responsible to MetLife for any breaches of BCCPR's obligations**.

To make such finding, you must evaluate and weigh the totality of the evidence presented, and no one single factor or element is sufficient to support such finding. As a result, you must find that plaintiff proved by the preponderance of **strong and robust evidence** that BCCPR was in fact a sham that served no other legitimate or business purpose whatsoever to conclude that it was the defendants' alter ego and proceed to pierce its corporate veil.[27]

Otherwise, if plaintiff failed to prove by the preponderance of the evidence any one of the requirements I have explained with **strong and robust evidence** – the existence of an oral agreement or contract between BCCPR and MetLife that was in fact breached by BCCPR, and that CCPR was in fact established as a sham for no other legitimate purpose

---

26 See *DACO v. Alturas de Florida*, 132 DPR 905 (1993)

27 See *González v. St. Just Corp.*, 101 DPR 168, 170 (1973) and *DACO v. Alturas de Florida*, 132 DPR 905 (1993).

but to shield defendants from personal liability, you may find for plaintiff. Otherwise, if plaintiff has failed to prove by a preponderance of the evidence any of these requirements with **strong and robust evidence**, then your verdict on the third cause of action must also be for defendants.

### 4. <u>Causation</u>.

Only if you decide that there was in fact a verbal agreement between BCCPR and MetLife that was breached and that plaintiff has satisfied its burden to enable you do pierce its corporate veil and make defendants responsible to MetLife for such breach, may you then proceed to determine the damages, if any, suffered by MetLife for which defendants should be made personally responsible, and the law in this respect is identical to the one I previously instructed you on regarding damages for breach of an oral agreement.

Accordingly, you must first decide that the defendants' breach of any of BCCPR's duties or obligations to MetLife under their verbal agreement did in fact cause damage to MetLife, and in this respect plaintiff must prove by a preponderance of the evidence that its damages were the direct and immediate consequence or result of BCCPR's' breach. Otherwise, if plaintiff has not established by a preponderance of the evidence that plaintiff's damages were the direct result or immediate consequence of BCCPR's breach of any of its duties or obligations to MetLife under their verbal agreement, then you must find for defendants in the third cause of action for piercing the corporate veil.[28]

Otherwise, if you determine that the preponderance of the evidence presented by plaintiff proved that its damages were in fact the direct and immediate result of BCCPR's

---

28 CCPR Article 1060, 31 LPRA 3024.

breach of any of its duties or obligations to plaintiff under their verbal agreement, you may proceed to determine the amount of damages, if any, which plaintiff is entitled to receive from defendants as a result of your decision to pierce BCCPR's corporate veil and make defendants personally liable to MetLife for such damages.

5. **Measure of Damages**

In evaluating the measure of damages to which plaintiff is entitled, you may consider all of the evidence presented, including moneys previously recovered or collected by plaintiff from other parties or former defendants in these proceedings, in order to determine the amount of damages which plaintiff is entitled to recover from these defendants.

In this respect, the law entitles parties to a contract that has been breached to recover only the foreseeable damages, and does not entitle such party to receive speculative or punitive damages.[29] In other words, only the amount that would make the aggrieved party to a contract "whole" may be granted as damages,[30] and amounts claimed by such party beyond that amount, or amounts that are punitive, speculative and/or unforeseeable at the time of the contract's breach may not be included in the measure of damages.[31]

**WHEREFORE,** defendants respectfully request that the Court instruct the jury in the manner set forth and proposed herein.

---

29  See CCPR Article 1060, 31 LPRA 3024, which contains Puerto Rico's statutory measure of damages for breach of contract.

30  As noted by the First Circuit Court of Appeals in *Noble v. Corporación Insular de Seguros*, 738 F.2d 51 (1st Cir. 1984), "[d]amages in Puerto Rico are compensatory. *** Perez v. Sampedro, 86 DPR 526 (1962) (contracts); *** (punitive damages do not exist in Puerto Rico). *** ." 738 F.2d at 54.

31 See CCPR Article 1060, 31 LPRA 3024.

**RESPECTFULLY SUBMITTED** in San Juan, Puerto Rico, this 26th day of February 2004.

**I HEREBY CERTIFY** that on this same date a true and exact copy of this motion was served by electronic and regular mail to: **Jesús Cuza, Esq.,** Greenberg Traurig, PA, 401 East Las Olas Blvd., Suite 200, Ft. Lauderdale, FL 33301; **Ina M. Berlingeri Vincenty,** Esq. Goldman Antonetti & Cordova, P O Box 70364, San Juan, Puerto Rico 00936-0364; **Harold Vicente, Esq.,** P O Box 11609, San Juan, PR 00910-1609; and to **Judge George Z. Singal** through fax number 207-780-3392.

/s/ JAA
**JOSE A. AXTMAYER**
*Pro Se*
PO Box 70174
San Juan, P.R.  00936-8174
Tel.  787-777-4040
Fax. 787-777-4041
USDC-PR NO. 120613
jaxtmayer@axtmayerpsc.com


/s/ Dennis Parces Enriquez
**DENNIS PARCES-ENRIQUEZ**
PO Box 70174
San Juan, PR 00936-8174
Tel.  787-777-4040
Fax. 787-777-4041
USDC-PR NO. 220013
dparces@axtmayerpsc.com

/s/ Manuel San Juan
**MANUEL SAN JUAN**
PO Box 9023587
San Juan, PR 00902-3587
Tel. 787-723-6637/69
Fax 787-725-2932
USDC-PR NO. 204706
sanjuanm@microjuris.com