## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY,<br><br>Plaintiff<br><br>v.<br><br>NATIONAL COMMUNICATIONS SYSTEMS, INC., *et al.,*<br><br>Defendants | CIVIL NO.: 97-2331 (GZS) |

## DEFENDANTS' CONSOLIDATED
## OPPOSITION TO MOTIONS TO STRIKE AND *IN LIMINE*

**TO THE HONORABLE COURT**:

**COME NOW** defendants José A. Axtmayer *pro se*, and Altagracia Escudero, Hans H. Hertell, Marie Stubbe and their conjugal partnership through their respective undersigned counsel, and respectfully state, allege and pray as follows:

1.  Plaintiff has filed a series of Motions to Strike and/or *In Limine* to which defendants hereby respond in a consolidated fashion.

2.  As noted below, many of plaintiff's arguments in support of its motions are premised on a misunderstanding as to the purpose for which defendants have announced particular witnesses or their intended objective in the presentation of certain documents described in their list of documentary exhibits.  As such, defendants respectfully submit that while they need not disclose the specific details of a particular testimony or document which they will introduce as evidence during the trial of the instant action, the explanations below should suffice to enable the Court to understand the validity and propriety of defendants' intended use of such witnesses and/or documents and therefore deny plaintiff's motions to strike or eliminate such evidence.

2. To that effect, defendants oppose each of plaintiff's Motions to Strike and/or *In Limine* on the grounds set forth below:

### A. Motion In Limine Requesting Instruction to Jury Regarding Defendant National Communications Systems, Inc.

A review of this motion, plaintiff's Motion for Entry of Default Judgment of February 17, 2004 (Dkt. No. 398) and defendants' Motion in Compliance with Order ("Motion in Compliance") dated February 12, 2004 (Dkt. No. 394) reveals that all parties are in agreement with having the Court declare in default co-defendant National Communications Systems, Inc. d/b/a National Benefits Communications ("NBC"), and the maintenance of such party as a named defendant in these proceedings.

The parties disagree, however, as to the information or instruction, if any, to be given to the Jury regarding NBC's status. The undersigned have suggested that the Jury be informed of the entry of default against NBC and that such co-defendant "has been found in default of its payment obligations to MetLife under the promissory notes and Letter of Intent" (Motion in Compliance, page 4), while plaintiff objects to such or any instruction that indicates to the Jury NBC's default, presumably because the use of such term ("default") would give the Jury the "incorrect impression that the issue of liability for repayment *** has already been decided against NBC or mislead the jury into believing that NBC is the entity that will be required to pay back MetLife, regardless of whether Axtmayer and Hertell are found personally liable."

The entry of default against a party to a civil action results in a conclusive determination of liability against such party, as well as with respect to the well pled facts in support thereof. Accordingly, upon the Court's entry of NBC's default as requested by

all parties (including plaintiff), there will a conclusive determination that NBC is liable to plaintiff and plaintiff's allegations in its Second Amended Complaint in support of NBC's liability will also be conclusively established as true and proven.  See *Ortiz González v. Fonovisa*, 277 F.3d 59 (1st Cir. 2002), where the Circuit Court of Appeals, quoting *Franco v. Selective Ins. Co.*, 184 F.3d 4, 9 n.3 (1st Cir. 1999), ruled that "a defaulting party 'is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated.'"  See also, *Goldman , Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit International, Inc.*, 982 F.2d 686 (1st Cir. 1993)[1]; *Santiago v. Hospital Cayetano Coll y Toste*, 260 F. Supp.2d 373, 378 (D.P.R. 2003) (Domínguez, J.), where this court unequivocally restated the long-standing rule of law that the "default of a defendant constitutes an admission of all facts well-pled in the complaint" ; and *MetLife v.Colón Rivera,* 204 F. Supp.2d 273, 279 (D.P.R. 2002).

Defendants respectfully submit that having requested that the Court enter NBC's default in these proceedings, plaintiff cannot now attempt to avoid the consequences of such default and must live with the conclusive results that ensue from such default as a matter of law.  In fact, the issue of liability for repayment of the moneys advanced by Metlife to NBC under the promissory notes has been in controversy precisely because plaintiff has consistently attempted to go beyond the written agreements it entered into in 1995 and has therefore controverted its own documentary reality.  As such, NBC's default and resultant liability to plaintiff is not only relevant but critical to defendant's defenses to

---

[1] In *Medfit*, **supra**, the First Circuit Court of Appeals, citing and quoting several long-standing precedents from the First Circuit and the Supreme Court, again enunciated "the maxim that an entry of default against a defendant establishes the defendant's liability" (982 F.2d at 693).

plaintiff's cause of action for breach of contract. Accordingly, NBC's liability to MetLife conclusively established by NBC's default, must therefore be disclosed to the Jury as a matter of law. After all, the Jury's understanding of the events that transpired between the parties and NBC's default thereunder is a fact that the Jury must necessarily know in order to reach a proper determination and verdict as to plaintiff's cause of action for breach of contract and defendants's alleged indebtedness to MetLife thereunder.

The latter is commonly known as the familiar "empty chair defense," and defendants are fully entitled to its utilization in the trial of the instant action. See *McDermoot, Inc. V. Clyde*, 114 S.Ct. 1461, 1470 (1994), were the Supreme Court stated that "a defendant will often argue the 'empty chair' in the hope of convincing the jury that the settling party was exclusively responsible for the damage" and *Harrison v. Garber,* 750 F. Supp. 203, 206, n. 6, were the Federal District Court found "absolutely no support" for the proposition that a party could "be precluded from asserting the familiar 'empty chair' argument."

In view of the foregoing, the appearing defendants respectfully submit that plaintiff's arguments in support of its motion *in limine* are untenable, contradict the reality of this case and are but another attempt by plaintiff to divert attention from its long-term unwillingness to collect the amounts it is due from the moneys plaintiff advanced under its Letter of Intent with NBC and the latter's acceptance thereof with its execution of the promissory notes from the parties and/or persons indebted to MetLife under such agreements, which after all are the only written agreements ever entered into by MetLife in connection with its failed program in Puerto Rico. Plaintiff's position, of course, is the result of its need to sustain the alleged existence of a prior verbal agreement between MetLife and the appearing

defendants. Otherwise, plaintiff cannot sustain its cause of action for breach of contract against the appearing defendants.

Accordingly, defendants respectfully request that plaintiff's motion *in limine* be denied and that the Jury be informed and instructed as to NBC's default in these proceedings.

**B.    Motions In Limine Requesting that References as to Certain Law Firms, Attorneys and Issues of Conflict of Interest be Precluded and that Certain Witnesses be Stricken from Defendants' Witness List**

Plaintiff's Motion *In Limine* is predicated on a misunderstanding as to the true import of the testimony to be rendered by the witnesses whose testimony plaintiff wishes to prevent during the trial of the instant action. While it should suffice to represent to the Court that the undersigned are fully aware of the Court's recent decision as to the mootness regarding the issue of disqualification of plaintiff's counsel in these proceedings (Order dated February 2, 2004, Dkt. No. 384) and that, as a result, they intend to fully abide by the Court's opinion and order regarding such issue and do not intend to present any evidence, testimonial or documentary, directed at revisiting such issue during the trial of this case, defendants hereby support their intended use of the witnesses in question by providing some limited information as to their purported testimony, namely:

1.  **Vicente Antonetti**.  His testimony will establish and/or confirm Mr. Axtmayer's status as a name and capital partner of the law firm of Goldman Antonetti Córdova & Axtmayer ("GACA"), as well as the Chairman of such firm's Corporate and Banking Department. He will also confirm the fact that the firm was actively engaged for almost a year in the procurement and

obtainment for Mr. D'Angelo and his company CGD Enterprises the approval of a benefits communications corporation authorization for the employees of the Commonwealth of Puerto Rico and the fact that numerous meetings and significant coordination took place to obtain such authorization, including the preparation and submission of several legal opinions rendered by members of GACA on which Puerto Rico's Treasury Secretary relied to approve and authorize such program.  As a result, Mr. Antonetti's testimony will support defendants' contentions regarding the amount of effort and coordination required to obtain the authorization for a benefits communication program from a public employer and therefore the propriety of the compensation to which Messrs. Axtmayer and Hertell were entitled when moneys were advanced to them from co-defendants Benefits Communications Corporation of Puerto Rico ("BCCPR") and NBC. Mr. Antonetti's testimony is also relevant and pertinent for various other reasons, among which is to contradict plaintiff's allegations that the authorizations obtained by defendants for and on behalf of BCCPR and/or MetLife were invalid and unlawful, to confirm plaintiff's reliance on the same legal opinions rendered by the law firm during its due diligence investigation of the program to which MetLife subscribed in its Letter of Intent with NBC, as well as (among others) to establish the existence of an agreement between GACA and Mr. D'Angelo regarding the compensation to be paid to the law firm upon commencement of the enrollment process of Puerto Rico's public employees. Such compensation was so significant that its loss to the law firm upon the

      departure of a significant number of its lawyers with Mr. Axtmayer in March1994 and their new law firm's execution of an equivalent agreement with Mr. D'Angelo for a greater amount of compensation are credible and valid bases on which to support the contention that plaintiff's obstinate prosecution of its claims against the appearing defendants is mostly the result of MetLife's officers' embarrassment at their failed attempt to successfully market the company's life insurance product to public employees in Puerto Rico, coupled with its counsel's acrimony and resentment against its former clients and partners.

2. **Roberto Montalvo**. Mr. Montalvo's testimony is relevant and pertinent for the same reasons as that of Mr. Antonetti, as well as to confirm GACA's acrimonious relationship with Mr. D'Angelo and CGD after their selection of Mr. Axtmayer's new law firm to represent them (evidenced by Montalvo's filing of a civil action to collect fees from D"Angelo and CGD) and its retention of their client files which were never returned to D'Angelo or CGD and were in fact made available to MetLife in connection with its prosecution of the instant action.

3. **Margarita Blanco**. In all likelihood (barring the need to use her to contradict and/or impeach the testimony of any of the foregoing or any other of plaintiff's witnesses), her testimony will relate only to events that transpired in 1995 and 1996 by which time Ms. Blanco was the administrator of AAMG. As such, her office was located immediately adjoining the premises leased

by BCCPR from AAMG and which were later taken over by MetLife and its personnel.

4. **Jesus Cuza**.  Defendants currently believe that Mr. Cuza's testimony may not be necessary and will attempt by all possible means not to call Mr. Cuza to the stand, particularly in view of his role as plaintiff's counsel during the trial.  In the event, however, that Mr. Montalvo repeats his prior practice that prompted the Court to forewarn him to be "careful and exact in subsequent sworn statements before this court,"[2] defendants reserve their right to call Mr. Cuza to the stand for the exclusive and limited purpose of impeaching Mr. Montalvo and/or Mr. Antonetti.

In view of the foregoing representations and clarifications made by the appearing defendants, they respectfully request that the Court deny plaintiff's motion *in limine* as to the matters discussed herein or, alternatively, hold such motion in abeyance until events at the trial compel its disposition.

    **C**.    **Motion to Strike Certain Documents from Defendants' Exhibit List**

Defendants respectfully disagree with plaintiff's assertion that a significant number of the documents listed in its Exhibit List pertain "only to the disqualification issue" and must therefore be stricken.  As noted above, defendants respectfully represent to the Court that they will abide with its decision regarding such issue and therefore do not intend to

---

1 See Order dated September 27, 2000, filed and entered into on September 28, 2000 in Misc. No. 98-111, footnote 1at pages 1-2.

present any evidence, testimonial or documentary, directed at revisiting such issue during the trial of this case.

The documents listed in plaintiff's motion, however, have many different uses and a great deal of probative value as to matters that remain in controversy in the instant action. For instance, most of the documentation from the GACA law firm lends ample support to the proposition that a great deal of time and effort was expended in the procurement and obtainment of the approval of CGD's benefits communications program for Puerto Rico's public employees. Such evidence, in turn, is relevant and pertinent given plaintiff's position that defendants were not entitled to receive compensation for services previously rendered to D'Angelo and his companies in connection with their attempts to establish benefits communications programs throughout the public sector on the Island.

In addition, the documentary evidence in question support the following propositions and/or facts that either remain in controversy or amply demonstrate some of the events that have transpired in these proceedings : (1) MetLife's counsel had a long-term acrimonious relationship with its former clients D'Angelo and CGD; (2) the validity and legality of benefits communications programs in Puerto Rico's public sector; (3) the numerous efforts and the elements that must be coordinated to in fact establish such programs at the premises of any public sector employer on the Island; and (4) the efforts expended by Mr. Axtmayer's prior law firm to assist NBC (and its predecessor CGD) to obtain the requisite approvals and licenses to commence and validly proceed with their coordinated sale of insurance product in the Puerto Rico marketplace. Inasmuch as plaintiff has controverted each and every one of the foregoing elements of defendants' assertions in response to MetLife's claims, such documentary evidence is relevant and pertinent and its introduction and presentation to the Jury should be allowed.

Lastly, plaintiff's motion seeks to preclude the introduction of documentary evidence surrounding meetings and discussions held by and between Mr. Axtmayer and MetLife officers and its in-house counsel in an attempt to revive the MetLife/NBC program in Puerto Rico. MetLife's argument in support of its motion, however, is premised on its incorrect mischaracterization of such documents as part of "settlement negotiations," possibly because defendants also committed the same mischaracterization in their exhibit list. In reality, such documentation was produced in the course of an attempted "work-out," which took place well before the pending civil action was first filed by MetLife and even longer before the defendants were made parties thereto. As such, they were not "settlement negotiations" but another example of the many occasions in which defendants attempted to assist MetLife in getting its program off the ground in Puerto Rico and, as such, the documentation in question is relevant, admissible, and its introduction as evidence is critical to defendants' evidentiary support for their contention that they never were indebted to MetLife and that MetLife knew and recognized such fact. As an example of the documentation in question, defendants respectfully refer the Court to Defendants' Identification IIIII, which consists of a letter dated March 12, 1997, from MetLife's Assistant General Counsel to co-defendant Axtmayer, in which such MetLife officer stated that

> "MetLife hereby acknowledges that José Axtmayer, Hans Hertell, *** and Benefits Communications of Puerto Rico, *** **are not indebted or obligated to MetLife under the terms of the letter of intent** entered into between NBC and MetLife on September 11, 1995."

Even if the Court were to deem the meetings and conversations held between co-defendant Axtmayer and Mr. Jackson as in-house counsel to MetLife as "settlement"

-10-

negotiations, Rule 408 of the Federal Rules of Evidence does not bar reliance on the admissions contained in Mr. Jackson's letter and, in any event, the rule of law in the First Circuit is that "evidence concerning negotiations may be admitted to establish admissions of fact." *Urico v. Parnell Oil Company,* 708 F.2d 852,854 (1st Cir. 1983). Moreover, a letter admitting that defendants do not owe plaintiff anything is not subject to Rule 408 (see *Hanson v. Waller*, 888 F.2d 806, 814 (11th Cir. 1989), where the Circuit Court ruled that a "letter, not constituting an offer of compromise, was properly admitted as an admission by a party opponent, pursuant to *** Rule **** 801."

Accordingly, defendants respectfully request that the Court deny plaintiff's motion and permit the introduction of such evidence during the trial of the instant action.

**WHEREFORE**, defendants respectfully request that the Court deny the plaintiff's motions to strike and *in limine* for the reasons stated herein.

**RESPECTFULLY SUBMITTED,** in San Juan, Puerto Rico, this 29th day of February 2004.

**I HEREBY CERTIFY** that on this same date a true and exact copy of this motion was served by first class mail to: **Jesús Cuza, Esq.,** Greenberg Traurig, PA, 401 East Las Olas Blvd., Suite 200, Ft. Lauderdale, FL 33301; **Ina M. Berlingeri Vincenty,** Esq. Goldman Antonetti & Cordova, P O Box 70364, San Juan, Puerto Rico 00936-0364; **Harold Vicente, Esq.,** P O Box 11609, San Juan, PR 00910-1609; and **Judge George Z. Singal** through fax number 207-780-3392.

**/s/ JAA**
**JOSE A. AXTMAYER**
*Pro Se*
PO Box 70174
San Juan, P.R.  00936-8174
Tel.  787-777-4040
Fax. 787-777-4041
USDC-PR NO. 120613
jaxtmayer@axtmayerpsc.com


**/s/ Dennis B. Parcés**
**DENNIS PARCES-ENRIQUEZ**
*Counsel for Altagracia Escudero*
PO Box 70174
San Juan, PR 00936-8174
Tel.  787-777-4040
Fax. 787-777-4041
USDC-PR NO. 220013
dparces-enriquez@axtmayerpsd.com


**/s/ Manuel San Juan**
**MANUEL SAN JUAN**
*Counsel for the Hertells*
PO Box 9023587
San Juan, PR 00902-3587
Tel. 787-723-6637/69
Fax 787-725-2932
USDC-PR NO. 204706
sanjuanm@microjuris.com